(No. 37163.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* IRENE J. PREIS, Plaintiff in Error.

*Opinion filed March 22, 1963.*

William A. Montgomery, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Edward J. Hladis and Edwin J. Belz, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Hershey delivered the opinion of the court:

The defendant was indicted in the criminal court of Cook County for assault with intent to murder and assault with a deadly weapon. After a trial without a jury she was found guilty on the charge of assault with intent to murder and was sentenced to serve one to two years in the State Reformatory for Women. The defendant's sole contention here is that she was not proved guilty beyond a reasonable doubt.

From October, 1958, to February, 1959, the defendant was represented by George Stansell, an attorney, in several actions including a suit for the partition of certain real estate owned by the defendant and her husband, a separate maintenance action, and a suit to recover under an insurance policy.

Stansell testified that on October 31, 1960, soon after 3:00 P.M., the defendant came to his office and, after declining his offer to hang up her coat, sat down in a chair on the opposite side of and to the left of his desk. She told Stansell that another attorney had told her that the partition suit was improperly handled and that she thought she had been victimized and deprived of her rights in all the cases that Stansell had handled. Stansell testified that at some point during the course of the conversation the defendant said there was nothing left for her to do except shoot someone. They talked for three or four minutes and defendant then said, "There is nothing left to do except to shoot you". Stansell then testified, "and with that she stood up and placed her hand in the right hand pocket of her trenchcoat, and a bulge in the right hand pocket pointed toward me and there was a movement of her hand in the right hand pocket". Stansell then came out from behind his desk, going around the right side of his desk, and seized the defendant and tried to force his hand into her pocket. A struggle followed and at the end the defendant released a loaded revolver that she had in her coat pocket and Stansell took it out of her pocket and placed it on his desk.

The defendant's testimony did not vary substantially from the above, except that, according to her, at the end of the conversation preceding the alleged assault she said "I might as well resort to violence". Defendant stated that she then got up from her chair and placed her hand in her coat pocket, and said, "Maybe we can get some publicity on this". According to the defendant she then turned around to leave the office when Stansell came from behind the desk and attacked her. Defendant further testified that because of the narrow pockets in her coat it would have been very difficult to pull the trigger of the gun while it was in her pocket.

She admitted that she had never before left her home carrying a loaded revolver. However, she testified that her

sole purpose in going to Stansell's office on this occasion was to create publicity so as to dramatize her position in the law suits. She stated that she had no intention of killing or shooting Stansell and that she was an expert shot and could have easily shot Stansell had she wanted to.

Stansell testified that after he took the revolver from the defendant, she stated "All right, I have other guns * * * I will come back another day and I will plan it better and I will kill you". Stansell's law partner testified that he overheard this statement by the defendant from the hall outside Stansell's office. The police officers who were summoned to the office testified that the defendant told them at the office and later at the police station that she had gone to the office to kill Stansell and would return at a later date for the same purpose. Stansell's secretary testified that she was present at the law office and heard the defendant make this statement to the police. The defendant denied making these statements and maintained that she was merely seeking publicity and had no intention of killing Stansell. She did admit, however, that before the police arrived, when Stansell refused to return her gun, she stated "There can be another time and another place if this is what you are looking for".

It is the defendant's contention that the evidence in this case failed to establish either of the two essential elements of the offense of assault with intent to murder, the commission of an assault and the existence of a specific intent to murder.

An assault is defined by statute as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another". (Ill. Rev. Stat. 1959, chap. 38, par. 55.) An assault may consist of using a gesture toward another so as to give him reasonable grounds to believe that the person using that gesture means to apply actual force to his person. (*People* v. *Dudgeon,* 341 Ill. App. 533.) Accordingly we have held that one who points a loaded

revolver at another, within shooting distance, in a threatening manner, is guilty of an assault. *People* v. *Henry,* 356 Ill. 141; *People* v. *Martishuis,* 361 Ill. 178.

The testimony on both sides regarding the alleged assault in the present case is basically the same. Stansell and the defendant testified that at the end of their preliminary conversation defendant either said "I am going to shoot you" or "I might as well resort to violence", and put her hand in her right-hand coat pocket and stood up. Stansell stated that he observed a movement of her hand and a bulge in her pocket pointed at him. The defendant admitted that she had her hand on the gun when she stood up. During the struggle immediately thereafter she stated, according to Stansell, "I have my hand on the trigger and I'm going to shoot". We feel that the evidence does establish that Stansell, at the moment the defendant stood up, reasonably would have been apprehensive that she was about to shoot him. The defendant testified on cross-examination as follows, when asked why Stansell, when he came from behind the desk, thought that she had a gun: "I told him I was going to resort to violence, and when I stood up he definitely knew I put my hand in my pocket not for a hankie." Thus it appears that the defendant, by her own admission, intended to and did create a situation where Stansell thought that she was going to apply force to his person. She had in her possession a loaded pistol and was standing within shooting distance of him. Under these circumstances the defendant, when she stood up and placed her hand in her pocket and took hold of the loaded revolver so as to appear to be pointing it at Stansell, unquestionably committed an assault upon him.

It is our opinion that the evidence also discloses that the defendant at the time of the above assault possessed the requisite intent to murder Stansell. She came into his office carrying a loaded revolver. She admitted that she told Stansell, as she stood up, that she was going to have to re-

sort to violence. Later she repeatedly stated in the presence of Stansell, his secretary and two police officers that she went to the office to kill Stansell and planned to return later and attempt to do so again.

The defendant argues that the fact that Stansell was able to move from behind his desk by the more indirect route and reach the defendant without being shot indicates that she did not intend to kill him. The record does not, however, disclose what the defendant was doing while Stansell was coming around the desk, except that she testified that she was not struggling to get the gun out of her pocket. She refused to release the loaded pistol when Stansell came around the desk, and during the ensuing struggle threatened to pull the trigger. This conduct would seem to be more indicative of her intent to kill Stansell than it would that she was planning to leave his office as she testified. At any rate the assault at this point had already occurred and the reason for her subsequent failure to consummate her plan to kill Stansell is immaterial.

The defendant was proved beyond a reasonable doubt to have been guilty of both elements of the crime charged, the assault and the specific intent to commit murder. Had the defendant discharged the revolver and been successful in her attempt to kill Stansell she would have been guilty of murder. (*People* v. *Downen*, 374 Ill. 146.) The judgment of the criminal court of Cook County is, therefore, affirmed.

*Judgment affirmed.*